UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| JOY TUBB and husband, JOHN TUBB, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 4:08-cv-47 |
| ) | *Lee* |
| WAL-MART STORES EAST, L.P., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the Court is the motion of Defendant Wal-Mart Stores East, L.P. ("Wal-Mart" or "Defendant") for summary judgment in this "slip and fall" premises liability action [Doc. 36]. Plaintiff Joy Tubb ("Mrs. Tubb" or "Plaintiff") alleges she slipped and fell in a slick substance in the parking lot of a Wal-Mart retail store in McMinnville, Tennessee [Doc. 1-2 at ¶¶ 3-4].[1] In this motion, Wal-Mart denies it breached any duty to Plaintiff with respect to the slick substance and/or that Mrs. Tubb's fault bars her claim. For the reasons stated below, Wal-Mart's motion for summary judgment [Doc. 36] will be **GRANTED**.

**I.    BACKGROUND**

On May 23, 2008, Mrs. Tubb parked her vehicle in an area of the McMinnville Wal-Mart parking lot that is open to customers [Doc. 1-2 at ¶ ; Doc. 5 at ¶¶ 4, 22]. When she arrived, a light rain had been falling for about five minutes [Doc. 36-1 at 9]. She stepped out of her vehicle and onto the parking lot at the location where she would later fall. At that time, the parking lot was not

---

[1] The claims of Plaintiff John Tubb ("Mr. Tubb") are entirely derivative of Mrs. Tubb's claims and will not be addressed separately.

slippery, and there was no visible slippery substance on the lot [*See* Doc. 36-1 at 5-10]. She went into the store and stayed for 20 to 30 minutes, during which time a heavy downpour of rain fell [Doc. 36-1 at 6; Doc. 39-1 at ¶ 3].[2] After the rain eased, Plaintiff returned to her car where she slipped and fell, injuring herself [Doc. 36-1 at 8; Doc. 39-1 at ¶ 4]. After she fell, she noticed a slimy substance on the ground where she fell, and she collected a sample of it [Doc. 39-1 at ¶ 4].

As Plaintiff later learned, there had been a spill or leak of some sort of oily substance in the same area of the parking lot on the previous day [Doc. 39-1 at ¶ 2; Doc. 39-3 at 5]. After the store manager notified assistant manager James Carr ("Carr") of the spill, Carr called a maintenance employee, Rodney Welch ("Welch") to clean up the spill [Doc. 39-4 at 4]. Welch covered the spill with an absorbent called "All-Zorb," let it sit for five minutes, and then swept it up with a broom [Doc. 36-2 at ¶¶ 3-5].[3] He then covered the area a second time with a light coat of the All-Zorb, in order to sweep up anything he might have missed on the first sweep, and let it sit for another two minutes before sweeping up again [Doc. 36-2 at ¶ 6; Doc. 39-3 at 8]. Although Welch had been trained to put up safety cones while cleaning spills, he did not do so on this occasion [Doc. 39-3 at 9]. When Welch finished his cleanup efforts, all the oily fluid had been absorbed [Doc. 36-2 at ¶ 7; Doc. 39-2 at 7], all visible All-Zorb had been swept up, and the parking lot was clean and not slippery [Doc. 36-2 at ¶¶ 7-10]. Welch did not believe any All-Zorb was left in the parking lot, nor did it occur to him that any of the All-Zorb might have remained in the asphalt where he could not

---

[2] In her deposition, Plaintiff stated she was in the store for 20 to 30 minutes, and in her affidavit she stated she was inside for about 30 minutes.

[3] In his deposition, Welch stated he used an absorbent called "Spill Magic" [Doc. 39-3 at 5], but it appears that Spill Magic was replaced by All-Zorb as the approved Wal-Mart absorbent [Doc. 39-5 at 5]. Welch later averred that the absorbent he used was, in fact, All-Zorb [Doc. 36-2 at ¶ 5].

see it [*id.* at ¶ 8]. When Plaintiff arrived the next day, as noted above, the area of the parking lot at issue was still not slippery and there was no visible slimy substance.

Plaintiff employed an expert, Herbert Stewart ("Stewart"), to determine what caused the slippery condition, and Stewart analyzed a sample of the substance provided by Plaintiff [Doc. 39-2 at 1]. Stewart concluded that the slippery condition was caused by Defendant's failure "to completely remove any residual absorbent used on the oil spill that occurred on the day prior to the accident." [*Id.*]. Stewart also opined that the Wal-Mart spill absorbent program "appear[ed] to be primarily written for indoor spills." [*Id.* at 2]. Plaintiff submitted photocopies of the All-Zorb packaging, which states "Store Use Only" and provides instructions for the product's use [*Id.* at 14]. After covering the spill area and allowing the All-Zorb to work, the user is instructed: "Scrape the absorbed liquid with the rubber edge of the squeegee into the dustpan. . . . Make sure that all residues are picked up and floor is safe for traffic before removing safety cone." [*Id.*]. The packaging also includes the following warning: "CAUTION: EYE IRRITANT. KEEP OUT OF REACH OF CHILDREN" [*id.*]. Welch received a written reprimand for failing to "follow through" on the cleanup, and Carr received a similar verbal reprimand [Doc. 39-4 at 7; Doc. 39-5 at 8].[4]

Plaintiff sued for damages in state court, and Defendant removed to this Court. Plaintiff alleged that "[h]ad the substances been properly cleaned and the area properly cleaned and subsequently maintained by Defendant, Plaintiff would not have been injured." [Doc. 1-2 at ¶ 7]. Plaintiff advanced several theories of liability: that Defendant used the wrong product or method to clean the spill; that the cleanup was incomplete; that Defendant caused the slippery condition or was

---

[4] Defendant argues evidence of these reprimands is inadmissible under Fed. R. Evid. 407 (subsequent remedial measures). The Court need not reach this issue.

3

at least on notice of it; and that Defendant failed to properly train or supervise its employees with respect to cleaning up spills [Doc. 1-2].

## II. ANALYSIS

### A. Standard of Review

As a matter of procedural law, Fed. R. Civ. P. 56 provides the standard for summary judgment in a diversity case. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A "material" fact is one that *matters*--i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law, state law in a diversity case, provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248; *Rutherford v. Columbia Gas*, 575 F.3d 616, 623 (6th Cir. 2009) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). A fact is therefore material if it relates to a legal element of Plaintiff's state law tort claim. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id.* at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907.

In ruling on a motion for summary judgment, the court may consider any affidavits along with any pleadings, depositions, answers to interrogatories, or admissions. *Pennycuff v. Fentress*

*County Bd. of Educ.*, 404 F.3d 447, 450 (6th Cir. 2005). The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party carries this burden, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot solely on the allegations in its pleadings. Fed. R. Civ. P. 56(e). In other words, the non-moving party must present some significant, probative evidence indicating the necessity of a trial to resolve a material, factual dispute. *Id.* A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). If the non-moving party fails to show a genuine dispute with respect to material facts regarding any element essential to its claim, and on which it bears the burden of proof, then the moving party is entitled to judgment as a matter of law and summary judgment is therefore appropriate. *Celotex*, 477 U.S. at 322.

    **B.**    **Elements of Plaintiff's Claim**

As noted above, a fact is "material" for purposes of this summary judgment motion if it relates to an element of Plaintiff's claim. Under Tennessee law, a claim for negligence requires proof of (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; (3) an injury to the plaintiff; (4) causation-in-fact; and (5) proximate, or legal, causation. *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 858 (6th Cir. 2003). In addition to these basic elements of negligence, the plaintiff in a premises liability case must prove either that the defendant had actual or constructive notice of a dangerous condition or that the defendant "created" the condition. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004).

    **1.**    **Duty**

While business owners "are not insurers of their customers' safety," *Psillas v. Home Depot,*

5

*U.S.A., Inc.*, 66 S.W.3d 860, 864 (Tenn. Ct. App. 2001), an owner owes a duty to its patrons to maintain its premises, including its parking lot, in a reasonably safe condition. *Sims v. Memphis Processors, Inc.*, 926 F.2d 524, 527 (6th Cir. 1991); *McClung v. Wal-Mart Stores, Inc.*, 270 F.3d 1007, 1012 (6th Cir. 2001) (defining premises to include parking areas). Consequently, the owner must remove or warn of dangerous conditions or defects on the premises. *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). This duty adheres, however, only when the risk from such a condition or defect is unreasonable. *Id.* "A 'risk is unreasonable . . . if the foreseeable probability and gravity of harm posed by [the] defendant's conduct outweigh the burden upon [the] defendant to engage in alternative conduct that would have prevented the harm.'" *Id.* (*quoting McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). In this balancing test, the foreseeability of harm is "paramount because '[f]oreseeability is the test of negligence.'" *Hale v. Ostrow*, 166 S.W.3d 713, 717 (Tenn. 2005) (*quoting Biscan v. Brown*, 160 S.W.3d 462, 480 (Tenn. 2005)). The existence of a duty is a question of law for the court. *Id.* at 717; *Rice*, 979 S.W.2d at 308.

### a. Was the All-Zorb Misused?

Plaintiff argues that her injury was a foreseeable result of Defendant's conduct because the All-Zorb was misused. The All-Zorb packaging states it is for "Store Use Only" and the product is for use on "floor[s]." As Plaintiff points out, the packaging also instructs the user to remove the All-Zorb with a squeegee, not a broom. Defendant replies that the All-Zorb packaging does not "prohibit" outdoor use, and that "Store Use Only" may simply mean that the product is not for sale, but is for use by store employees only. Viewing the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party, Plaintiff's interpretation is a reasonable one, and the trier of fact may reasonably infer that the packaging implicitly suggests All-

6

Zorb should be used only indoors on smooth floor surfaces that may be "squeegeed."

### b. Was Harm Foreseeable from the Misuse of All-Zorb?

Defendant argues that, even assuming the All-Zorb was not intended for outdoor use, the harm that befell Plaintiff was not foreseeable. Defendant argues that Welch had successfully used All-Zorb to clean spills inside the store, and he had never used it outdoors before. Defendant also notes that the area Welch cleaned was free of the substance that was originally spilled, that it was free of visible absorbent, and it was not slippery until after the heavy rainfall. Defendant concludes that it was not foreseeable that some residue of the All-Zorb would mix with rain water and become slippery at a later time. Insofar as Defendant argues that the rainfall was an unforeseeable intervening cause, its argument must fail. Rainfall in an outdoor parking lot can hardly be described as unforeseeable.

More fundamentally, Defendant's argument confuses the issues of duty and breach. Defendant's argument--that Defendant bore no *duty* to Plaintiff because it was not foreseeable that All-Zorb residues might become slippery--is a non sequitur. Defendant's duty is to maintain its premises in a reasonably safe condition for the sake of its patrons. *Sims*, 926 F.2d at 527. Whether it was foreseeable that customers might slip and fall because All-Zorb was used outdoors is not a question of duty, but of breach. *See Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 366-67 (Tenn. 2008). *Satterfield* explains that a duty arises whenever the defendant's conduct creates a "recognizable risk" to the plaintiff or a class of persons of which the plaintiff is a member. *Id.* (*quoting* Restatement (Second) of Torts § 281 cmt. c). In contrast, "the ultimate reasonableness, or lack of reasonableness, of the defendant's conduct" is reserved for the trier of fact. *Id.* at 367. *See also McCain v. Florida Power Corp.*, 593 So.2d 500, 502-03 (Fla. 1992) (*cited approvingly in*

7

*Satterfield*, 266 S.W.3d at 367 n.41) (differentiating between the legal threshold requirement that some "general threat of harm" be foreseeable in order to trigger a duty and the ultimate factual inquiry whether the defendant's particular conduct foreseeably caused the specific injury). In sum, the "duty" inquiry is simple and unconcerned with particulars: "the court's consideration of foreseeability is limited to assessing whether there is some probability or likelihood of harm that is serious enough to induce a reasonable person to take precautions to avoid it." *Satterfield*, 266 S.W.3d at 367.

Here, Defendant bore a duty to maintain its premises in a reasonably safe condition, and Defendant was therefore obligated to clean up the oil spill in a reasonably safe manner. Whether that duty was breached--i.e., whether it was foreseeable that the specific conduct (using All-Zorb outdoors with a broom) would cause a slip hazard to customers--is a question for the trier of fact. Although Defendant couches its argument in terms of duty, Defendant has essentially asked the Court to determine as a matter of law that no reasonable jury could find that it was foreseeable that using All-Zorb outdoors might create a slip hazard after a rainfall. The Court is unwilling to intrude so brusquely into the jury's province. A reasonable jury could infer that the misuse of a product intended to clean up slippery surfaces could result in a slip hazard, and it is certainly foreseeable that slippery surfaces may cause substantial injury.

     **c.**  **Open and Obvious**

Defendant also argues that it bore no duty to Plaintiff because the danger from the slippery condition was open and obvious. This argument is foreclosed by *Coln v. City of Savannah*, 966 S.W.2d 34, 37 (Tenn. 1998) (*overruled on other grounds*, *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000)). If the obviousness of the danger is material, it is material only to Plaintiff's

comparative fault, discussed below. *See id.*

### 2. Creation and Notice

As noted above, in a premises liability case, the plaintiff must prove either that the defendant had actual or constructive notice of a dangerous condition or that the defendant "created" the condition. *Blair*, 130 S.W.3d at 764. Here, there are no facts indicating Defendant had actual notice of the slippery condition, and Defendant argues it had no constructive notice because the slippery condition could have existed for at most 20 to 30 minutes (the length of time between Plaintiff's arrival at the store, when there was no slippery substance, and her fall). *See id.* ("[C]onstructive notice can be established by proof that the dangerous or defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have become aware of the condition.").

Plaintiff concedes the point. Rather than address whether Wal-Mart employees should have discovered the slippery condition during the time she was inside the store, Plaintiff argues only that she is not required to show notice, constructive or otherwise. Plaintiff argues instead that the dangerous condition was "created by" Welch. Plaintiff argues the All-Zorb residue mixed with rain water to produce a slippery condition, and Wal-Mart, through Welch, therefore created the danger. Defendant replies that the condition was created, at least in part, by the intervening rainfall.

#### a. Was the Slippery Condition "Created by" Wal-Mart?

"Liability in premises liability cases stems from [the owner's] superior knowledge of the condition of the premises." *Ogle v. Winn-Dixie Greenville, Inc.*, 919 S.W.2d 45, 46 (Tenn. Ct. App. 199) (*citing McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)). For that reason, if the owner did not create the condition, the plaintiff must prove notice. On the other hand, if the owner

did create the dangerous condition, the plaintiff need not prove notice because the owner is "*charged with actual notice.*" *Hamby v. State*, 2004 WL 1737390, at *6 (Tenn. Ct. App. 2004) (emphasis added). *See also Arrington v. United States*, 2005 WL 3533441, at *2 (W.D. Tenn. 2005) ("Actual notice can be established if the plaintiff can show that the defendant caused or created the dangerous condition . . . ."); *Sanders v. State*, 783 S.W.2d 948, 952 (Tenn. Ct. App. 1989) ("[T]he state constructed the offending instrumentality and obviously must be charged with notice of its condition as constructed."). Tennessee law does not, however, permit business owners to be charged with notice of every dangerous condition to which their actions might have contributed. For example, a store owner who stocks his shelves with bottled beverages has in some small measure contributed to the creation of any spill that a third party may later cause. An expansive "creation" rule would effectively force such an owner either to cease stocking that product or else become an "insurer[] of [his] customers' safety." *See Psillas*, 66 S.W.3d at 864.

An owner is considered to have created only those conditions for which it is "directly responsible." *Friar v. Kroger Co.*, 1998 WL 170140, at *2 (Tenn. Ct. App. 1998). *See also Blair*, 130 S.W.3d at 766 (citing the "firmly established" principle "that a premises owner's duty to remedy a condition, not *directly created by* the owner, is based on that owner's actual or constructive knowledge of the existence of the condition") (emphasis added). The term has been applied most often where the dangerous condition inhered in the owner's physical premises or facilities, *e.g.*, *Frazer v. Horton Automatics*, 2006 WL 3001013 (Tenn. Ct. App. 2006) (defective door); *Hawkins v. Opryland, U.S.A., Inc.*, 1994 WL 323092 (Tenn. Ct. App. 1994) (broken step), or where an employee personally spilled a slippery substance, *e.g., Keene v. Cracker Barrel Old Country Store, Inc.*, 853 S.W.2d 501 (Tenn. Ct. App. 1992).

One line of Tennessee cases has employed the term "creation" to cover the situation in which a business owner *indirectly* causes a dangerous condition. In *Hale v. Blue Boar Cafeteria Co.*, the plaintiff slipped and fell on a wet tile surface. 1980 WL 150173, at *2 (Tenn. Ct. App. 1980). Although there was no evidence the owner or its agents spilled the water, the Tennessee Court of Appeals held that there was a triable issue of fact with respect to whether the defendant's practice of allowing customers to serve themselves beverages "created" the hazardous condition. *Id.* at *4. The *Blue Boar* court articulated a three-factor test for liability: whether the condition was foreseeably caused by the owner's method of operation, whether the injury was foreseeably caused by the condition, and whether the owner exercised due care in the circumstances. More recently, in *Trebing v. Fleming Companies, Inc.*, the Tennessee Court of Appeals followed the *Blue Boar* court's approach. 40 S.W.3d 42 (Tenn. Ct. App. 2000). In *Trebing*, shopping carts were left near a store's mechanical doors, causing the doors to open sporadically. *Id.* at 45. As a result, rain from a thunderstorm blew into the store's foyer, pooling on the treated concrete surface, on which the plaintiff slipped and fell as she exited. *Id.* The plaintiff alleged that by allowing the carts to remain outside the foyer, the defendant created the dangerous condition. *Id.* at 46. The court approved the viability of the plaintiff's theory but held there was no triable issue of fact because there was no evidence that the defendant regularly allowed carts to remain near the doors. *Id.* at 47.

Were *Blue Boar* and *Trebing* to apply here, there would be a triable issue of fact with respect to whether Wal-Mart "created" the slippery condition which caused Plaintiff to fall. As explained above, a reasonable jury could find that it was foreseeable that the use of All-Zorb outdoors might cause a slippery condition. The Tennessee Supreme Court, however, has rejected this line of cases. *Blair*, 130 S.W.3d at 765. In *Blair*, the court explained that the factors articulated in *Blue Boar*

(including whether the condition was a foreseeable result from the owner's conduct) "d[id] not add anything to the analysis" and "mudd[ied] the inquiry into . . . whether the premises owner either created or had actual or constructive notice of the dangerous condition." *Id.* at 765. In other words, the concepts of "creation" and "notice" require something more than, and distinct from, mere foreseeability. If the plaintiff advances a "creation" theory, she must show the dangerous condition was "directly created" by the owner; otherwise, she must show the owner had notice of the condition. *Id.* at 765-66.

Furthermore, a condition is not "directly created" by the owner when it is attenuated from the owner's conduct by an intervening cause. In the line of cases overruled by *Blair*, the dangerous conditions were caused in part by the intervening acts of third parties, but the *Blair* court noted that its holding would apply no matter whether the condition was "caused by the owner's method of operation, by a third party, or by natural forces." *Id.* at 764, 766. *See also Morgan v. Tanger Outlet Centers, Inc.*, 2006 WL 1006553, at *4 (E.D. Tenn. 2006) (holding that *Blair*'s constructive notice test controlled where the plaintiff alleged that a slip hazard resulted from the defendant's use of a slippery paint and failure to remedy poorly draining stormwater).

The Court concludes that the facts presented here, even taken in the light most favorable to Plaintiff, do not create a genuine issue of material fact with respect to whether Defendant "directly created" the slippery condition that caused Plaintiff's fall. Plaintiff has produced no evidence that the slippery condition would have existed but for the intervening rainfall. Thus, as *Blair* suggests, this is a case in which an intervening "natural force[]" was a necessary cause of the condition. While it may have been foreseeable that All-Zorb residue might combine with rainfall to create a slippery surface, Plaintiff must show something more than foreseeability to establish that Defendant

created the slip hazard. *See id.* at 765 (foreseeability does not "add anything" to the "creat[ion]" inquiry).

### b. Was Defendant on Constructive Notice of the Condition?

Because the slippery condition was not "directly created" by Defendant, Plaintiff can survive summary judgment only if she can prove notice. After *Blair*, there are two viable theories of constructive notice: (1) that the condition existed for such a length of time that the owner should have discovered its existence in the exercise of due care, and (2) that the existence of the condition was the "reasonably foreseeable" result of "a pattern of conduct, a recurring incident, or a general or continuing condition." *Id.* at 766. Taking the position that the issue of constructive notice did not arise, Plaintiff also presented no evidence showing a pattern of conduct, a recurring incident, or a general or continuing condition. There is no evidence that Welch or any other Wal-Mart employees had ever used All-Zorb outdoors. Nor is there any evidence that this area of the parking lot was prone to becoming slippery. *See Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005). Consequently, Plaintiff has failed to establish an element essential to her claim, and on which she bears the burden of proof, and Defendant is therefore entitled to summary judgment. *See Celotex*, 477 U.S. at 322.

### C. Comparative Fault

Defendant also argues it is entitled to summary judgment because no reasonable juror could conclude Plaintiff's fault was less than Defendant's. *See Eaton v. McClain*, 891 S.W.2d 587, 590 (Tenn. 1994). Because Defendant is entitled to summary judgment on other grounds, the Court need not reach this question.

13

**III. CONCLUSION**

For the reasons stated above, Wal-Mart's motion for a summary judgment [Doc. 36] is **GRANTED** and this action will be **DISMISSED WITH PREJUDICE**. Plaintiff's motion to amend her ad damnum clause [Doc. 42] and Defendant's motion to deem admitted certain requests for admission [Doc. 35] are **STRICKEN AS MOOT**.

A separate judgment order will enter.

SO ORDERED.

ENTER:

*s/Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE